____ FILED  ___ ENTERED
____ LOGGED  _____ RECEIVED

**1:12 pm, Sep 17 2020**
AT BALTIMORE
CLERK, U.S. DISTRICRT COURT
DISTRICT OF MARYLAND
BY _____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE TARGET TELEPHONE | CASE NO.  1:20-mj-2207 TMD |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Christopher Hiester, a Task Force Officer with the Federal Bureau of Investigation ("FBI"), being duly sworn, state as follows:

1. I submit this Affidavit to apply for a warrant authorizing the seizure and search of the following electronic device currently in police custody: an Alcatel cellular phone, black in color, with IMEI: 015552000983646 (the "**Target Telephone**"). The **Target Telephone** is specifically identified in Attachment A. The applied-for warrant would authorize the forensic examination of the Target Telephone for the purpose of identifying electronically stored data particularly described in Attachment B.

2. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for search warrants, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. I have set forth only the facts I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of criminal activity—to wit, possession with the intent to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1); carjacking in violation of 18 U.S.C. § 2119; and felon in possession of a

firearm in violation of 18 U.S.C. § 922(g) (collectively, the "Subject Offenses")—are presently located within the **Target Telephone**.

## BACKGROUND AND EXPERTISE

3.      I have been a sworn member of the Baltimore Police Department ("BPD") since June 1993, having attended the Baltimore Police Academy from June 1993 through December 1993. During my time with the BPD I have been assigned to patrol in the Western, Eastern and Northern Districts.  There, I was charged with various tasks, including the preliminary investigations of violent crimes, such as Homicides, Shootings, Rapes, Armed Robberies, Armed Commercial Robberies, Aggravated Assaults and various other drug, violent, and non-violent offenses. I was also a member of the Violent Crimes Task Force, where I investigated non-fatal shootings. I am currently assigned to the Citywide Robbery Unit tasked with investigating commercial robberies and carjackings.

4.      I have interviewed witnesses and suspects in reference to the above listed crimes. I also am a certified B.E.S.T. officer (Behavioral Emergency Services Team). I have written or actively participated in the service of numerous search and seizure warrants, and am familiar with the laws which govern search and seizure warrants.

5.      In January of 2014, I was sworn in as a Special Deputy U S Marshal. I am currently assigned, as a Task Force Officer, to the Violent Crimes Task Force with the Baltimore office of the FBI.

6.      Based on my training and experience, I know the following:

    a.      The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. Cell phones have both digital storage capacity and

2

digital camera capabilities.

  b. Individuals involved in robberies and carjackings often use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity and sometimes take photographs of themselves and/or co-conspirators.

  c. Individuals who possess or own handguns or other weapons frequently photograph themselves holding the handguns or other weapons.

  d. Photographs on a suspect's digital device sometimes show the suspects handling proceeds or other property taken during robberies and carjackings.

  e. Individuals who engage in Hobbs Act robbery often use cellular telephones to communicate with co-conspirators via phone calls and text messages.

  f. Cell phones often record the phone's historical location data.

7. With respect to drug trafficking, I also know the following:

  a. Drug trafficking is an ongoing and recurring criminal activity. As contrasted with crimes against persons, which tend to be discrete offenses, drug trafficking is an illicit commercial activity that is characterized by regular, repeated criminal activity.

  b. Cellular telephones are an indispensable tool of the drug trafficking trade. Drug traffickers use cellular telephones, push-to-talk telephones, Short Message Service ("SMS"), electronic-mail, and similar electronic means and/or devices, often under fictitious names or names other than their own, in order to maintain contact with other conspirators and narcotic traffickers. In addition, narcotic traffickers will often change their cellphones following the arrest of a member of their drug trafficking organization ("DTO"), or at random in order to frustrate law enforcement efforts.

3

      c.      Drug traffickers often place nominal control and ownership of telephones in names other that their own to avoid detection of those telephones by government agencies. Even though telephones are in the names of other people, drug traffickers retain actual ownership, control, and use of the telephone, exercising dominion and control over them;

      d.      Drug traffickers utilize different types of communication devices, and change the numbers to these communication devices frequently. This is done to avoid detection by law enforcement personnel. I also know that drug traffickers will dedicate different communication devices for different aspects of the trafficking organization. An example of this would be a drug trafficker utilizing one cellular telephone to communicate with customers and using another cellular telephone to communicate with a source of supply of drugs; and

      e.      Persons involved in the illicit distribution drugs take or cause to be taken photographs of themselves, their associates, their property and their product. These traffickers usually maintain these photographs in their possession, in locations such as their homes, vehicles, electronic devices, or on their person.

## PROBABLE CAUSE

8.      On January 31, 2020, at about 9:50 PM, Southern District patrol responded to 1769 Washington Blvd for a reported armed carjacking. Upon arrival, they were met by the victim who advised he had been carjacked by an unknown black male, while operating as a "hack" or unlicensed taxi or rideshare driver. Citywide Robbery ("CWR") was notified, and the victim was transported the CWR office, where he was interviewed.

9.      The victim stated he was driving northbound on N Fulton Ave. in his father's red 2008 Ford Escape, MD tag 9DE2773, acting as a "hack." He further stated he had been in the city to purchase cocaine earlier in the evening and was driving passengers to try and earn the money

he had spent on drugs. The victim stated he picked up the suspect on N Fulton Ave, near Mosher St. He described the suspect as a black male in his mid-20s to early-30s, 5'11" tall, with a thin build, and wearing a black baseball cap with bright lettering, a black jacket and dark pants. The suspect told him he needed to pick up his sister and then go to the laundromat. The suspect directed him to turn right onto Lanvale St, then right onto McKean Ave.

10. Once stopped, the victim stated he would make room in the back of his SUV for his sister and the laundry, and exited the vehicle to do so. The victim walked to the rear of the vehicle and opened the rear gate, at which time he was joined by the suspect, who had produced a black semiautomatic handgun. The victim stated the suspect racked the slide, which ejected a round (the suspect eventually picked up the live round). The victim told the suspect to "take it," referring to the vehicle. The suspect told the victim that if he called the police he would find out where he lived and kill him and his entire family. The suspect re-entered the victim's vehicle and drove away. The victim, who was not injured and did not have a cell phone, began walking to the Washington Blvd area to notify the police.

11. The next day, on February 1, 2020, an officer contacted Southern District patrol to notify them that the stolen 2008 Ford Escape was seen on video entering the Horseshoe Casino parking garage earlier that day. The cameras captured the vehicle driving around the parking garage, and then parking across the street at the Royals Farms, located at 1530 Russell Street, Baltimore, MD. As officers in marked patrol vehicle arrive on scene at the Royal Farms, the driver, later identified as Charles Couser, walked across Russell Street and into the Horseshoe Casino. As he walked into the casino, Couser was stopped by officers and placed under arrest,

12. Couser was searched incident to arrest and found to be in possession of a clear plastic bag holding 50 vials containing white powder substance and suspected to be cocaine.

13. Further review of the casino's surveillance footage confirmed that Couser was the sole occupant of the 2008 Ford Escape.

14. The vehicle was recovered and towed to the Southern District station pending processing by Crime Lab. Couser was transported to the Citywide Robbery office to be interviewed. During the course of the interview, which was video recorded, Couser admitted to being in possession of the stolen vehicle; stating that he had purchased it from someone in the area of Clifton Ave and McKean Ave, which is only a few blocks from where the armed carjacking had occurred. Police recovered the **Target Telephone** from Couser at the time of this interview. However, Couser did not provide any information on the phone, such as phone number or service provider.

15. When looking at the **Target Telephone** obtained from Couser, officers observed a screen saver photo of Couser wearing a black baseball cap and the handle of a handgun visible in waistband of his right side.

16. On February 3, 2020, the carjacked 2008 Ford Escape was processed by the Baltimore City Police Crime Lab Unit. Recovered at that time was a loaded Sig Sauer 40 caliber handgun and fifty "trashcan" vials of suspected cocaine.

17. Later, on this same date, the victim responded to the Citywide Robbery office for the purposes of viewing a photo array. Upon viewing the photo array, which contained an image of Couser, as well as 5 other males with similar physical features, the victim positively identified Couser as the man who had pointed a gun at him, threatened to shoot him, and drove away in his vehicle.

18. On February 21, 2020, the Hon. Beth P. Gesner, Chief U.S. Magistrate Judge, authorized a warrant permitting investigators to search the **Target Telephone**. *See* Case No. BPG-

20-0598. Investigators attempted to execute the warrant, but were unable to search the **Target Telephone** due to security protections on the **Target Telephone**. Due to improvements in the forensic extraction device, including software updates, investigators now seek to examine the **Target Telephone** again in an effort to search its contents as described in Attachment B.

19. Based on this information, I submit there is probable cause that Couser committed the Subject Offenses and that, based on my training, knowledge and experience, evidence of this crime is contained within the **Target Telephone**.

20. The **Target Telephone** currently remains in the custody of the FBI at the Woodlawn office facilities in a secured locker. The only known specifics of the **Target Telephone** requested for authorization to search are described in Attachment A, and the types of information expected to be recovered from the device are described in Attachment B.

21. I know that the **Target Telephone** has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the **Target Telephone** first came into the possession of law enforcement.

22. Moreover, to the extent that the warrant authorizes the seizure of any tangible property, any wire or electronic communication (as defined in 18 U.S.C. § 2510), or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.

23. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the FBI or BPD, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to seize and search the **Target Telephone**, as described in Attachment A, for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Christopher Hiester
Task Force Officer, FBI

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this 28 day of August, 2020.

Hon. Thomas M. DiGirolamo
U.S. Magistrate Judge
District of Maryland

8